UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TATIANA BOVGIRYA, on behalf of herself and the putative class,<br><br>                    Plaintiffs,<br><br>         v.<br><br>AMERICA HONDA MOTOR COMPANY, INC.,<br><br>                    Defendant. | **OPINION**<br><br>Civ. No. 2:17-cv-06248 (WHW) (CLW) |

**Walls, Senior District Judge**

This matter involves an advertisement sent via email by Defendant American Honda Motor Company, Inc. to Honda owners. Currently pending before the Court is Plaintiff Tatiana Bovgirya's motion to remand. Decided without oral argument under Local Rule 78, the motion is granted.

**FACTUAL AND PROCEDURAL HISTORY**

This matter arises out of emails sent by Defendant American Honda Motor Company, Inc. ("AHM") to recent purchasers of Honda vehicles offering a discount to incentivize them to upgrade to newer models.[1] In 2015, Plaintiff purchased a 2015 Honda CR-V vehicle, and on July 14, 2016, she received the email in question. Compl. ¶ 9–10, Not. of Removal, ECF No. 1, Ex. 1. In large bold text, the email stated "It's time to upgrade with your exclusive $500* offer," and advised her that she could "Take $500* off" if she upgraded to a new 2016 model year Honda.

---

[1] Defendant asserts that it is properly referred to as "American Honda Motor Co. Inc." and was improperly named in the Complaint. *See* Not. of Removal at 1, ECF No. 1.

1

*Id.* ¶¶ 11–12. The asterisks correlated with a footnote that set out, in small font, limitations on the $500 offer, such as requiring "proof of retail ownership of eligible vehicle" as well as qualification for, and lease or finance through, Honda Financial Services. *Id.* ¶¶ 13–14.

The email also contained a picture of a 2016 Honda CR-V and displayed a price of "$23,845." *Id.* ¶ 15. In smaller font, the email informed the reader that the listed price was the "starting MSRP," and that it "excludes $900 destination and handling charge." *Id.* ¶¶ 16–17. The price also was followed by a footnote, which stated: "MSRP excluding tax, registration, $900.00 destination charge and options." *Id.* ¶ 21. Under the picture, the email listed features such as "Power Tailgate," "Bluetooth," and "7-inch Display Audio," and in small words says "Shown: CR-V 2WD Touring. Starting at $32,195." *Id.* ¶¶ 18–19.

The email indicated that the dealership from which Plaintiff had purchased her 2015 CR-V, Planet Honda in Union, NJ, was a participating dealership in the promotion. *Id.* ¶ 23. In response to the advertisement, Plaintiff went to Planet Honda on July 25, 2016 to purchase a new 2016 CR-V. *Id.* ¶ 26. She informed the sales representative that she wanted to accept the offer to upgrade and "Take $500 off," and the dealership acknowledged that she was accepting the $500 upgrade offer. *Id.* ¶¶ 24–25. Although the $500 should have been credited to the down payment, the invoice shows only the $600 down payment that Plaintiff paid by credit card. *Id.* ¶ 28. Plaintiff was charged $28,622 for her upgraded CR-V, which is $4,777 more than the amount listed in the advertisement. *Id.* ¶ 29. The email was sent to other New Jersey consumers during the promotion period, from July 6, 2016 to September 6, 2016. *Id.* ¶ 33. This number was estimated to be 8,554 in the Notice of Removal, but Defendant has since indicated that the number is 8,697. Def's. Opp. at 1 n.2, ECF No. 19. According to Defendant, nine recipients of

the email upgraded to newer Honda vehicles and accordingly received the $500 – seven bought a CR-V for $28,444 and two bought an HR-V for $26,926. Def's. Opp. at 9.[2]

On July 14, 2017, Plaintiff brought suit in the Superior Court of New Jersey, Union County alleging violations of New Jersey consumer protection laws on behalf of herself and other similarly situated. The propose class consists of "[e]very natural person to whom American Honda Motor Company, Inc. sent or caused to be sent an e-mail advertisement between July 6, 2016 and September 6, 2016 that was substantially the same as the advertisement sent to Plaintiff, with the identified participating dealership located within New Jersey." *Id.* ¶ 36.

In Count One, Plaintiff seeks statutory damages of $100 each, plus attorneys' fees and costs, under the Truth-In-Consumer Contract, Warranty and Notice Act ("TCCWNA") based on alleged violations of the General Advertising ("GA") regulations, Motor Vehicle Advertising Practices ("MVAP") regulations, and the Consumer Fraud Act ("CFA"). In Count Two, Plaintiff seeks a declaratory judgment that Defendant violated the GA and MVAP regulations and the CFA, as well as "notice relief" requiring Defendant to notify the Class of the declaratory ruling and advising them of their right to seek relief on their own. Count Two also seeks an injunction against Defendant prohibiting similar deceptive practices for a reasonable time following the judgment, and for Plaintiff only, seeks treble damages including treble the $500 offer and the excess in payment over the $23,845 quoted in the email.

On August 17, 2017, Defendant removed to this Court, asserting jurisdiction under the Class Action Fairness Act ("CAFA"). ECF No. 1. Plaintiff moved to remand on September 22. ECF No. 12. Defendant opposed on October 23, and Plaintiff filed a reply on November 13. ECF Nos. 19, 21.

---

[2] In its Notice of Removal, Defendant had provided the nationwide figure, 178 redemptions, rather than the 9 New Jersey redemptions. Def's. Opp. at 9 n.12; *see* Not. of Removal ¶ 24.

## STANDARD OF REVIEW

The Class Action Fairness Act ("CAFA") provides original jurisdiction in the federal courts over "class actions" if the matter in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d). In addition to the amount-in-controversy requirement, the "class" must have at least 100 members and the parties must be minimally diverse. *Id.*; *see Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 148 (3d Cir. 2009). To determine whether the amount in controversy exceeds $5 million, the claims of individual members must be aggregated. § 1332(d)(6). This Court must "add[] up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 591 (2013).

The amount-in-controversy allegations of a defendant seeking federal jurisdiction "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014). When a party opposes jurisdiction, the Court must find by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Id.*; *see* 28 U.S.C. § 1446(c)(2)(B) (requiring that "the district court find[], by a preponderance of the evidence, that the amount in controversy exceeds the amount specified"). Unlike diversity jurisdiction, there is no presumption against federal jurisdiction under CAFA. *Dart Cherokee*, 135 S. Ct. at 554.

The only jurisdictional issue in this case is whether the $5m amount-in-controversy requirement is satisfied.

## DISCUSSION

Defendant asserts that the amount in controversy is easily satisfied, as it could be as high as $11,280,501. Def's. Opp. at 12.[3] According to Defendant, the amount in controversy as to the TCCWNA claims should be calculated at $1,200 per class member, because Plaintiff alleges that the email contained 12 unlawful provisions. Defendant argues that Plaintiff would be entitled to recover $100 per violative provision under TCWWNA. Defendant argues that in the alternative, the TCCWNA claims should be calculated at $300 per class member, with $100 for each regulation or statute allegedly violated. At the new class size of 8,697, this would produce an amount in controversy of $10,436,400.

Defendant initially provided a valuation of Count 2 between $2,234,612 and $5,635,836. However, the proposed valuation is significantly lower now that Defendant has acknowledged that the number of New Jersey email recipients who redeemed the $500 offer was 9 rather than 178. Defendant now proposes Count Two should be valued at $844,101.[4]

Plaintiff does not dispute that attorneys' fees should be calculated at 30%. Consequently, to exceed $5 million, the total amount in controversy must be $3,846,153.85 before attorneys' fees are added. Accepting Defendant's proposed valuation of $844,101 for Count Two, the value of Count One must exceed $3,002,052.85. Because the current estimate of individuals for whom

---

[3] In its Notice of Removal, Defendant suggested a range of $6,241,055–$10,662,646. Not. of Removal ¶ 36. However, this calculation was based on the initial lower estimate of consumers to whom the email was sent, and the higher estimate of recipients who redeemed the $500 offer.

[4] Defendant calculated this by first trebling the difference between the amount paid by the nine Honda owners and the price advertised in the email, producing a total of $138,045. Customers who purchased a CR-V paid $28,444, which is $4,599 more than the $23,845 listed in the email. Customers who purchased an HR-V paid $26,926, which is $6,911 over the $20,015 listed in the email. Seven CR-V purchases and two HR-V purchases produces a result of $46,015, which would be trebled to produce $138,045. Def's. Opp. at 9 n.13. Defendant proposes that this figure be used as a proxy for other putative class members who either: (a) purchased new Honda vehicles and financed them through Honda Financial Services but did not redeem the $500 offer, or (b) purchased a new Honda vehicle and financed through other methods. Based on this, Defendant proposes that the $138,045 be tripled, producing a total valuation of $414,135. Defendant next contends that this number should be used as a proxy for the value of injunctive relief, so the number should be doubled. Combining this sum ($828,270) with Plaintiff's alleged individual damages of $15,831 produces Defendant's proposed valuation of $844,101. Def's. Opp. at 12.

statutory penalties are available is 8,697, jurisdiction is appropriate only if each individual is entitled to statutory damages exceeding $345.18 under the TCCWNA.

For the reasons that follow, the Court finds that Defendants have not shown that each individual is entitled to statutory damages exceeding $345.18, and consequently need not consider Defendant's calculation of the valuation of Count Two.

**Statutory Damages Under TCWWNA**

The TCCWNA was enacted to "prevent deceptive practices in consumer contracts." *Spade v. Select Comfort Corp.*, 232 N.J. 504, 515 (2018) (quoting *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 67 (2017)). The legislature sought to prevent the inclusion of lawful provisions in consumer contracts because "[e]ven though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights." *Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 431 (2013) (quoting Sponsors' Statement, *Statement to Assembly Bill No. 1660* (May 1, 1980)). The TCCWNA did not set out to change the substantive rights of customers or obligations of sellers, but only "to require sellers 'to acknowledge clearly established consumer rights,' and to 'provide[] remedies for posting or inserting provisions contrary to law.'" *Spade*, 232 at 515–16 (quoting *Shelton*, 214 N.J. at 432).

To carry out this purpose, the TCCWNA reads:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.

Any "aggrieved customer" under TCCWA is entitled to civil penalty, damages, and attorneys' fees:

> Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorneys' fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him.

N.J.S.A. 56:12-17.

The TCCWNA therefore provides a civil penalty of "not less than $100 or . . . actual damages, or both" against any person who violates N.J.S.A. 56:12-15. A violation occurs when a seller "offer[s] to any customer or prospective consumer or enter[s] into any written consumer contract or give or display any written . . . notice . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller." N.J.S.A. 56:12-15.

In her complaint, Plaintiff alleges that the email sent by Defendant violated her "clearly established rights" because it contained provisions violative of two regulations and one statute. Compl. ¶¶ 52–58. Plaintiff contends that the advertisement violated the General Advertising ("GA") regulations, which prohibit "[t]he use of any type, size, location, lighting, illustration, graphic depiction, or color resulting in the obscuring of any material fact." N.J.A.C. 13:45A-9.2(5). Plaintiff also asserts that the email violated the Motor Vehicle Advertising Practices ("MVAP") regulations, which prohibit "[t]he failure to state all disclaimers, qualifiers, or limitations that in fact limit, condition, or negate a purported unconditional offer . . . clearly and conspicuously, next to the offer and not in a

footnote identified by an asterisk." N.J.A.C. 13:45A-26A.7(a)(4). Finally, Plaintiff says that the provisions violate the Consumer Fraud Act, N.J.S.A. 56:8-2.

The Complaint identifies twelve provisions that Plaintiff alleges violate the GA, MVAP, and CFA; seven that place conditions on the "$500* offer," four that place conditions on the offer to "upgrade," and others stating in small font that the features displayed in the photographs were available only in upgraded trim levels, at a cost higher than the price displayed. Compl. ¶¶ 56–58.

Plaintiff asserts that Defendant is liable to Plaintiff and the members of the TCCWNA class for statutory damages of $100 each, plus attorneys' fees and costs. Accordingly, Plaintiff argues that the amount in controversy in the TCCWNA claims before attorneys' fees is $100 per class member, or $869,700.

In response, Defendant contends that the TCCWNA entitles each consume $100 for each unlawful provision contained in the contract, and therefore values the TCCWNA claims at $11,280,501.

This Court rejects Defendant's argument. Courts regularly apply a penalty of $100 per contract when determining TCCWNA liability. *See Shelton v. Restaurant.com, Inc.*, No. 10-824 (MAS) (DEA), 2016 WL 7015620, at * 2 (D.N.J. Nov. 30, 2016) (finding penalty of $100 per contract "appropriate"); *United Cons. Fin. Serv. v. Carbo*, 410 N.J. Super. 280, 307 (2009). Accordingly, courts assessing the value of TCCWNA claims for purposes of CAFA jurisdiction have similarly calculated penalties at $100 per contract. *See Quick v. Kramer*, No. 15-5845 (SRC), 2015 WL 7737347, at *2 (D.N.J. Nov. 30, 2015) (calculating amount in controversy based on $100 per contract); *Leff v. Belfor USA Grp., Inc.*, No. 15-2275, 2015 WL 3486883, at *2 (D.N.J. Jun. 2, 2015) (same); *Kaufman v. Lumber Liquidators, Inc.*, No. 14-6434, 2014 WL

7336795, at *4 (D.N.J. Dec. 22, 2014) (calculating TCCWNA damages at $100 per transaction). *But see Garcia v. Tempoe, LLC*, No. 17-2106 (SDW) (LDW), 2017 WL 6521372, at *4 (D.N.J. Nov. 15, 2017) (report and recommendation) (valuing TCCWNA claim at $100 per provision); *Walsh v. Defenders Inc.*, No. 2:16-CV-753-ES-SCM, 2016 WL 6775706 (D.N.J. July 15, 2016) (report and recommendation) *not adopted in subsequent determination on reconsideration on other grounds*, 2018 WL 555690 (D.N.J. Jan. 25, 2018).

Valuing the claim at $100 per email rather than $100 per provision is consistent with the text of the statute. "If the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written." *Shelton*, 214 N.J. at 429. The TCCWNA provides a "civil penalty of not less than $100" against "[a]ny person who violates the provisions of this act." N.J.S.A. 56:12-17. A violation occurs when a seller "offer[s] to any consumer or prospective consumer or enter[s] into any written consumer contract, or give[s] or display[s] any written consumer . . . notice . . . which includes any [unlawful] provision." N.J.S.A. 56:12-15. The statute is written in terms of the interaction between seller and consumer, not in terms of individual provisions. The alleged violation here occurred when Defendant "display[ed]" the email to Plaintiff, not when Defendant inserted each of the twelve allegedly unlawful provisions into the email. *See Shelton*, 214 N.J. at 443 ("[A] seller . . . may not make an offer, enter into a contract, or give or display any written consumer warranty, notice, or sign that contains terms contrary to any established state or federal right of the consumer."); *see also Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134 (3d Cir. 2014) ("TCCWNA creates liability whenever a seller presents a consumer with a covered writing that 'contains terms contrary to any established state or federal right of the consumer.'").

Moreover, applying a $100 per contract penalty rather than $100 per provision is not inconsistent with the remedial purpose of the statute. The TCCWNA sets the available civil penalty at "not less than $100," thereby allowing courts to award a higher penalty if warranted by the circumstances. As example, in *Walker v. Giuffre*, 415 N.J. Super. 598 (App. Div. 2010) *rev'd on other grounds*, 209 N.J. 124 (2012), the appellate court affirmed the award of $500 for a single violation. The trial court had awarded $500 to compensate the plaintiff in light of the fact that the plaintiff's class had been unexpectedly decertified because the class members were included in a classwide settlement in another pending case. *See Walker*, slip opinion, Pl's. Ex. A, ECF No. 21-1.

Here, there are no allegations in the complaint to support a statutory penalty in excess of the $100, and Plaintiff has not sought actual damages. The Court will therefore calculate the value of the TCCWNA claims at $100 per class member, or $869,700. Defendant has consequently not met its burden of establishing the amount in controversy. *See Leff*, 2015 WL 3486883, at *2.

## CONCLUSION

The Court finds that Defendant has failed to meet its burden to establish the amount in controversy exceeds $5 million. Plaintiff's motion to remand is granted. An appropriate order follows.

Date: 16 August 2018

Hon. William H. Walls
United States Senior District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| TATIANA BOVGIRYA, on behalf of herself and the putative class,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>AMERICA HONDA MOTOR COMPANY, INC.,<br><br>　　　　　　　　Defendant. | **ORDER**<br><br>Civ. No. 2:17-cv-06248 (WHW) (CLW) |

This matter having come before the Court on Plaintiff Tatiana Bovgirya's motion to remand, ECF No. 12, for the reasons set forth in the accompanying Opinion, it is hereby:

ORDERED that Plaintiff's motion to remand is granted; and it is further

ORDERED that this matter be remanded to the Superior Court of New Jersey, Union County.

Date: 16 August 2018

Hon. William H. Walls
United States Senior District Judge